UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

ELVIS SANCHEZ,

                                       **Plaintiff,**

               -against-

CITY OF NEW YORK, et al.,

                                       **Defendants.**

-----------------------------------------------------------------X

**18-CV-01259 (PGG)(SN)**

**REPORT &
RECOMMENDATION**

**SARAH NETBURN, United States Magistrate Judge**.

**TO THE HONORABLE PAUL G. GARDEPHE, United States District Judge:**

      Plaintiff, proceeding *pro se*, filed this civil rights complaint under 42 U.S.C. § 1983 on February 12, 2018. ECF No. 2. The City of New York ("the City") filed a motion to dismiss, which was granted as to the City and Defendants Whitaker, Stanley and Durante. ECF No. 76. Defendants' motion to dismiss Plaintiff's claims against 13 other Defendants was denied. ECF No. 79. On July 24, 2019, the remaining Defendants moved for summary judgment. ECF No. 99 ("Defs.' Br."). I recommend that Defendants' motion be granted in part and denied in part.

                                            **FACTUAL BACKGROUND**

      Unless otherwise noted, the following facts are undisputed. Defendants filed a Local Rule 56.1 Statement. See Defendants' Rule 56.1 Statement ("Defs.' 56.1"), ECF No. 101. Plaintiff did not respond to Defendants' 56.1 Statement by filing a "correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party." Local. Civ. R. 56.1(b). Under our Local Civil Rules, where a plaintiff fails to respond to each numbered paragraph served in the moving party's statement of material facts, those facts are "deemed to be

admitted for purposes of the motion . . ..ND" Local Civ. R. 56.1(c). The Court, therefore, would be justified in granting Defendants' motion in full on procedural grounds. Having failed to respond to Defendants' 56.1 Statement, Defendants' statements of fact may be deemed admitted. Local Civil Rule 56.1(c). Plaintiff, however, filed an affidavit to his opposition brief, setting forth additional material facts. See Sanchez Affidavit, (Pl.'s Aff.), ECF No. 116. Because Plaintiff is proceeding *pro se*, and because a determination based on a procedural default would be harsh, I recommend that the Court decide this motion on the merits.

Plaintiff was indicted in July 2014 for Predatory Sexual Assault Against a Child, under N.Y. Penal Law § 130.96, and was remanded into the custody of the New York City Department of Correction ("DOC") on Rikers Island. Defs.' 56.1 ¶¶ 1-2. On October 27, 2014, Plaintiff claimed he was attacked by three inmates—Rentas and Vargas and a third inmate whose named Plaintiff could not recall. Id. ¶¶ 10-13. At the time, Plaintiff was housed in Housing Area 9B at the Anna M. Kross Center ("AMKC"). Id. ¶¶ 10, 12-13. Housing Area 9B is a dormitory where inmates are not assigned to cells. Id. ¶¶ 6-8.

Plaintiff went to the medical clinic following the October 27, 2014 assault. Id. ¶ 14. At the clinic, Plaintiff stated that he was not injured. Id. ¶ 15. Doctors at the clinic also concluded that he was not injured. Id. ¶ 16. Defendant Captain Najah later investigated the October 27, 2014 incident. ¶ 17. During Captain Najah's investigation, Plaintiff declined to provide an oral or written statement about the attack. Id. ¶ 18. In his deposition, Plaintiff claimed that he asked Captain Najah to have him placed into protective custody. Id. ¶ 19.

On October 28, 2014, Plaintiff returned to the medical clinic. Id. ¶ 20. A doctor at the clinic concluded that Plaintiff was potentially suicidal, and Plaintiff was transferred from Housing Area 9B to Mental Observation Dormitory 12B ("Housing Area 12B"). Id. ¶¶ 21-22.

Like Housing Area 9B, Housing Area 12B is a dormitory where inmates are not assigned to cells. Id. ¶ 24-25.

On November 6, 2014, while housed in Housing Area 12B, Plaintiff claimed he was attacked again by at least one inmate. Id. ¶ 28. Plaintiff was first assaulted in the bathroom, where there were no officers present. Id. ¶¶ 30-31. The altercation continued outside the bathroom. Id. ¶ 32. The inmates who attacked Plaintiff on November 6, 2014, were not the inmates involved in the October 27, 2014 altercation. Id. ¶ 29. Plaintiff went to the medical clinic on November 6, 2014, as a result of this incident. Id. ¶ 33. From the clinic, he was transported by Emergency Medical Services ("EMS") to Elmhurst Hospital. Id. ¶ 34. Plaintiff had sustained back and facial pain and nasal bleeding as a result of the incident. Id. ¶ 35.

Captain Whitaker (who was previously dismissed from this action, ECF No. 76) investigated the November 6, 2014 incident. Id. ¶ 36. Plaintiff provided Captain Whitaker a written statement describing the incident. Id. ¶ 37. In his statement, Plaintiff wrote that other inmates had asked to speak to him in the bathroom about his charges. Id. ¶ 38. Plaintiff went to the bathroom, where he was assaulted while other inmates told him to "show us your papers from court." Id. ¶ 39. Following this assault, Plaintiff returned to his bed. Id. ¶ 40. The inmates that had assaulted Plaintiff in the bathroom followed him to his bed. Id. ¶ 41. There, Plaintiff showed the other inmates papers reflecting his criminal charges. Id. ¶ 42. Plaintiff did not request protective custody in his written statement following the November 6, 2014 incident, but said at his deposition that he told an unidentified correction officer that he wanted to be placed into protective custody following the attack. Id. ¶¶ 43-44.

On November 12, 2014, bail was posted for Plaintiff and he was released from Rikers Island. Id. ¶ 45. In January 2015, he was arrested for burglary and remanded to Rikers Island.

Id. ¶ 46-47. Upon readmission to Rikers Island on January 10, 2015, Plaintiff completed an Arraignment and Classification Risk Screening Form. Id. ¶ 48. The form asked Plaintiff to state whether he knew of any reason why he may be at risk or need special security or protection from the general inmate population. Id. ¶ 49. Plaintiff answered "no" to this question. Id. ¶ 50.

On January 16, 2015, while he was housed in Housing Area 10A at AMKC, Plaintiff claimed he was attacked by other inmates. Id. ¶¶ 51-52. These were not the same inmates who had attacked him on October 27, 2014, or on November 6, 2014. Id. ¶¶ 53-54. As a result of this attack, Plaintiff went to the medical clinic, where he was treated by Defendant Physician's Assistant Pierre Provilon who determined that Plaintiff had sustained facial pain, superficial bruising, and controlled nasal bleeding. Id. ¶¶ 56-57. Defendant Nurse Beatriz Nunez-Salas gave Plaintiff Tylenol. Id. ¶ 59. Plaintiff did not ask Provilon or Nunez-Salas to be placed in protective custody. Id. ¶¶ 58, 60.

On January 16, 2015, Defendant clinic employee Tommy Michael indicated in Plaintiff's medical records that Plaintiff had undergone a psychiatric assessment and been placed on suicide watch. Id. ¶ 61. But Plaintiff had not met with Michael on January 16, 2015— Michael's statement was a summary of Plaintiff's appointment with another individual on January 14, 2015. Id. ¶¶ 62-63. Plaintiff may have had a medical appointment scheduled for January 16, 2015, with Defendant clinic employees Cesar Thomas, Dr. Augustin Gomez, and Dr. Ayodele Green, but Plaintiff did not appear at the medical clinic that day to meet with any of these Defendants. Id. ¶¶ 64-71. He also did not appear at the medical clinic to meet with Defendant Ronan David Trojnowski on January 16, 2015, and there is no record of him having had an appointment scheduled with Trojnowski. Id. ¶¶ 70-71. But at his deposition, Plaintiff stated that he asked these Defendants for protective custody on January 16, 2015. Id. ¶ 72.

In February 2015, Plaintiff was housed in Housing Area 11B at AMKC. Id. ¶ 73. On February 25, 2015, Plaintiff was being transferred from Housing Area 11B to another housing area and was temporarily placed in a holding cell in intake at AMKC. Id. ¶¶ 74-75. Plaintiff testified that Captains White and Monroe and Officer Daif were present. See Defs.' 56.1, Ex. C, June 19, 2019 Deposition of Elvis Sanchez ("Sanchez Dep. II") 97:8-99:15; 104:14-105:18; 107:5-108:20. Plaintiff was assaulted by other inmates in his holding cell. Defs.' 56.1 ¶ 76. Defendants state that none of the inmates who assaulted Plaintiff on February 25, 2015, had assaulted him in October 2014, November 2014, or January 2015. Id. ¶ 77. But in his deposition, Plaintiff stated that that one of the inmates who attacked him in February 2015 was in the group of inmates who had attacked him in January 2015. See Sanchez Dep. II 93:19-25. As a result of this incident, Plaintiff went to the medical clinic where he was given a Tetanus-Diptheria-Pertussis Injection and placed on a backboard with a neck collar. Def.'s 56.1 ¶ 79. Clinical staff cleaned his wounds, applied bandages, and contacted EMS to transport Plaintiff to Elmhurst Hospital. Id. ¶¶ 79-80. At Elmhurst Hospital, Plaintiff was diagnosed with a minor nasal fracture, tooth loss, facial abrasion, and hand pain. Id. ¶ 81. He was treated with Ibuprofen and nasal spray. Id. ¶ 82. Once he returned from the hospital, Plaintiff was seen again in the medical clinic at AMKC. Id. ¶ 83. He was prescribed a nasal spray and Motrin and referred to an ear, nose and throat doctor and a dentist. Id. ¶¶ 84-85.

Defendant Captain Olaniyan investigated the February 25, 2015 incident. Id. ¶ 86. Olaniyan did not personally witness any inmates assault Plaintiff. Id. ¶ 87. On February 25, 2015, Plaintiff declined to provide Captain Olaniyan with the names of the individuals who had assaulted him or a statement about the altercation. Id. ¶ 88. But on February 27, 2015, Plaintiff provided Captain Davila (who is not named in this action) with a statement about the

altercation, indicating that though he did not know the names of the people who assaulted him, he could identify them. Id. ¶¶ 89-90. Plaintiff asked Captain Davila to place him into protective custody. Id. ¶ 91. On March 1, 2015, Plaintiff was placed into protective custody at the Brooklyn Detention Center. Id. ¶ 92.

## DISCUSSION

### I. Standard of Review

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Sloley v. VanBramer, 945 F.3d 30, 36 (2d Cir. 2019). A dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Coleson v. Janssen Pharm., Inc., 251 F. Supp. 3d 716, 719 (S.D.N.Y. 2017) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)) (internal quotation marks omitted). "In reviewing the evidence in the record, the court may not make credibility determinations or weigh the evidence and it must draw all reasonable inferences in favor of the nonmoving party, even though contrary inferences might reasonably be drawn." Davis-Garett v. Urban Outfitters, Inc., 921 F.3d 30, 46 (2d Cir. 2019) (internal quotation marks, emphasis, and citations omitted). See also Coleson, 251 F. Supp. 3d 719 ("A court is not charged with weighing the evidence and determining its truth, but with determining whether there is a genuine issue for trial.").

*Pro se* submissions are "construed liberally and interpreted to 'raise the strongest arguments that they suggest.'" Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (citing Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006)) (emphasis omitted). This policy is "driven by the understanding that '[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from

inadvertent forfeiture of important rights because of their lack of legal training.'" Id. at 475 (quoting Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983)).

**II.     Plaintiff's Claims Arising from the October 2014, November 2014, and January 2015 Incidents are Time-Barred**

Defendants argue that they are entitled to summary judgment with respect to Plaintiff's claims arising from the October 2014, November 2014 and January 2015 incidents because they are time-barred.

The statute of limitation applicable to § 1983 claims is governed by state law and is three years in New York. Shomo v. City of New York, 579 F.3d 176, 181 (2d Cir. 2009). A claim accrues "once the plaintiff knows or has reason to know of the injury which is the basis of his action." Veal v. Geraci, 23 F.3d 722, 724 (2d Cir. 1994) (citing Singleton v. New York, 632 F.2d 185, 191 (2d Cir.1980)) (internal quotation marks omitted). See also Shomo, 579 F.3d at 181 ("A Section 1983 claim ordinarily accrues when the plaintiff knows or has reason to know of the harm.") (internal quotation marks and citations omitted).

Plaintiff's claims against Defendants Najah, Keely, and Woods arose from conduct that occurred on October 27, 2014. The claims against Defendants Litwenak, Wolak, and Taveras arose from conduct that occurred on November 6, 2014. And the claims against Defendants Provilon, Trojanowski, Green, Thomas, Nunez, and Gomez arose from conduct that occurred on January 16, 2015. Plaintiff submitted the complaint to prison authorities on February 5, 2018. See Compl. 21.[1]

---

[1] Plaintiff's opposition states that he filed the complaint on February 5, *2015*, and concedes that he filed the complaint "one year after the statute of limitations." Pl.'s Opp. at 9. Given that: (1) Plaintiff states in his declaration that he submitted the complaint on February 5, *2018*; (2) the complaint addresses an incident that occurred on February *25*, 2015; and (3) the Court received Plaintiff's complaint on February 12, 2018, the Court accepts that the complaint was filed on February 5, 2018.

Plaintiff concedes that he filed his complaint after the statute of limitations had expired. Pl.'s Opp. at 3. But he argues that he was unable to file timely because he was could not gather information he needed to file his complaint or to speak with an attorney. Id. at 3-4. Plaintiff requests that the Court apply the doctrine of equitable tolling to suspend the statute of limitations because he exercised due diligence and was only late in filing because of "the restrictions of imprisonment." Id. at 3.

A.   **Equitable Tolling Does Not Apply to Plaintiff's Time-Barred Claims**

Equitable tolling of the statute of limitations applies only in "'rare and exceptional cases' where . . . 'extraordinary circumstances' prevented a party from timely performing a required act, and that party 'acted with reasonable diligence throughout the period he [sought] to toll.'" Walker v. Jastremski, 430 F.3d 560, 564 (2d Cir. 2005) (citing Doe v. Menefee, 391 F.3d 147, 159 (2d Cir. 2004)). See also Wallace v. Kato, 549 U.S. 384, 396, (2007) ("Equitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs."). Contrary to Defendants' position, "fraud, misrepresentation, or deception" are not the only grounds that warrant application of equitable tolling. Defs.' Reply at 5. See Moses v. Westchester Cty. Dep't of Corr., 951 F. Supp. 2d 448, 453-54 (S.D.N.Y. 2013) (noting that equitable rolling may apply on grounds other than fraud, misrepresentation or deception). The plaintiff has the burden of demonstrating that the doctrine should apply. Alaimo v. Bd. of Educ. of the Tri-Valley Cent. Sch. Dist., 650 F. Supp. 2d 289, 292 (S.D.N.Y. 2009). Tolling rules are borrowed from state law. Twersky v. Yeshiva Univ., 993 F. Supp. 2d 429, 438 (S.D.N.Y. 2014).

Plaintiff has not put forth facts demonstrating that his failure to file the complaint within the limitations period was due to "extraordinary circumstances." Though he argues that he was "restricted at times . . . to gather information and documents needed to support [his] claims,"

Pl.'s Opp. at 3, he does not allege that he was unaware of the harm to him when it accrued or that he was otherwise unable to pursue his rights before the limitations period ended. Plaintiff's claim that "the restrictions of imprisonment" should support equitable tolling is not supported by the law in this Circuit. See Walker v. Jastremski, 159 F.3d 117, 119 (2d Cir. 1998) ("[I]mprisonment *simpliciter* . . . does not toll a statute of limitations."); Perry v. Sony Music, 462 F. Supp. 2d 518, 520 (S.D.N.Y. 2006) (fact that plaintiff was incarcerated during limitations period "is not sufficient by itself to support an application of the [equitable tolling] doctrine"); see also Taylor v. Fresh Direct, No. 12-CV-2084 (GBD) (AJP), 2012 WL 6053712, at *5 (S.D.N.Y. Dec. 5, 2012), report and recommendation adopted, 2013 WL 1897778 (S.D.N.Y. May 7, 2013) ("[E]quitable tolling is not warranted merely because a plaintiff is in prison."). Plaintiff does not allege, for example, that his injuries prevented him from filing his claim or that he was misled about his ability to do so. Compare Pinaud v. Cty. of Suffolk, 52 F.3d 1139, 1157 (2d Cir. 1995) (noting that courts recognize equitable tolling where defendant conceals the wrong); Roundtree v. City of New York, No. 15-CV-6582 (GHW), 2018 WL 443751, at *4 (S.D.N.Y. Jan. 16, 2018) (finding plaintiff's claim that traumatic brain injury warranted equitable tolling sufficient at motion to dismiss stage). Moreover, there was a period of two months between the November 2014 and January 2015 incidents where Plaintiff was out on bail not subject to the restrictions of imprisonment. Defs.' 56.1 ¶ 45-47.

The cases Plaintiff cites in support of this point are factually distinguishable and do not involve the application of New York law. For example, in Fogle v. Pierson, 435 F.3d 1252, 1258-59 (10th Cir. 2006), the court applied Colorado law to find that a prisoner who asserted that defendants had kept him locked in his cell for 23 hours a day for five days a week without access to a law library had established grounds for equitable tolling. In Jones v. Blanas, 393 F.3d 918,

928-29 (9th Cir. 2004), the court applied California's tolling rules to conclude that a civil detainee's confinement entitled him to equitable tolling. Considering the facts presented and applying New York law, I find that the doctrine of equitable tolling is not applicable here.

### B. The Continuing Violations Doctrine is Inapplicable to Plaintiff's Time-Barred Claims

Defendants also argue in their motion that the continuing violations doctrine should not apply to suspend the statute of limitations for Plaintiff's otherwise time-barred claims. The continuing violations doctrine "is an exception to the normal knew-or-should-have-known accrual date." Shomo, 579 F.3d at 181 (internal citations and quotation marks omitted). To invoke the doctrine, the plaintiff must allege "some non-time-barred acts contributing to the alleged violation." Gonzalez v. Hasty, 802 F.3d 212, 220 (2d Cir. 2015) (quoting Harris v. City of New York, 186 F.3d 243, 250 (2d Cir. 1999)) (internal quotation marks omitted). A plaintiff must also allege that a specific defendant committed a constitutional violation within the limitations period. See Crenshaw v. Syed, No. 9:10-CV-0244 (GLS) (GHL), 2011 WL 2975687, * 4 (W.D.N.Y., Mar. 8, 2011) ("[I]t is not enough to simply allege that *someone* committed a wrongful act within the statute of limitations period.") (emphasis in original).

Plaintiff does not claim, nor does he put forth facts that could show that any of the individual Defendants allegedly involved in the October 2014, November 2014, or January 2015 incidents committed another violation after February 5, 2015. As such, the continuing violations doctrine does not apply to save these otherwise time-barred claims. I find that the claims relating to the two 2014 and the January 2015 incidents are barred by the three-year statute of limitations and cannot be saved by the equitable tolling or continuing violations doctrines.

### III.  Deliberate Indifference Claims

Defendants next argue that they are entitled to summary judgment on Plaintiff's failure to protect and deliberate indifference to medical needs claims. I address only Plaintiff's claims related to the February 25, 2015 incident, as only those are timely.

#### A.  Failure to Protect

Because Plaintiff was a pretrial detainee when the incidents in the complaint occurred, the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eight Amendment applies to his claims. See Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017) (noting that a detainee's rights are "at least as great as the Eighth Amendment protections available to a convicted prisoner") (citing City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244 (1983)).

"Prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994) (citations omitted). A prisoner may bring a § 1983 action under some circumstances when prison officials have failed to protect the prisoner from danger within the prison. Id. at 833 A pretrial detainee may establish a § 1983 claim for unconstitutional conditions of confinement by showing that officers "acted with deliberate indifference to the challenged conditions." Darnell 849 F.3d at 29 (citing Benjamin v. Fraser, 343 F.3d 35, 50 (2d Cir. 2003)). To prove his claim, a pretrial detainee must show that (1) the conditions at issue were "sufficiently serious to constitute objective deprivations of the right to due process," and (2) an officer "acted with at least deliberate indifference to the challenged conditions." Id. "A plaintiff can prove deliberate indifference by showing that the defendant official 'recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, *or should have known*, that the

11

condition posed an excessive risk to [the plaintiff's] health or safety.'" Charles v. Orange Cty., 925 F.3d 73, 87 (2d Cir. 2019) (quoting Darnell, 849 F.3d at 35) (emphasis in original). See also Luckey v. Jonas, No. 18-CV-8103 (AT) (KNF), 2019 WL 4194297, at *3 (S.D.N.Y. Sept. 4, 2019) (Darnell's two-pronged framework applies to failure to protect claims).

### 1. Sufficiently Serious Condition

Defendants contend that Plaintiff has failed to demonstrate a sufficiently serious condition to warrant relief under § 1983. "There is no static test to determine whether a deprivation is sufficiently serious; instead the conditions themselves must be evaluated in light of contemporary standards of decency." Darnell, 849 F.3d at 30 (citing Blissett v. Coughlin, 66 F.3d 531, 537 (2d Cir. 1995)) (internal quotation marks omitted). To prevail on his failure to protect claim, Plaintiff must first show that he was "incarcerated under conditions posing a substantial risk of serious harm." Hayes v. New York City Dept. of Corr., 84 F.3d 614, 620 (2d Cir. 1996). When considering whether an inmate's violence against another inmate is "sufficiently serious," "the focus of inquiry must be, not the extent of the physical injuries sustained in an attack, but rather the existence of a substantial risk of serious harm." Blake v. Kelly, No. 12-CV-7245 (ER), 2014 WL 4230889, at *5 (S.D.N.Y. Aug. 26, 2014) (quoting Heisler v. Kralik, 981 F. Supp. 830, 837 (S.D.N.Y. 1997)) (internal quotation marks omitted). Absent clear notice of a risk of harm to the prisoner, "[c]ourts routinely deny deliberate indifference claims based upon surprise attacks." Fernandez v. New York City Dep't of Correction, No. 08-CV-4294 (KMW), 2010 WL 1222017, at *4 (S.D.N.Y. Mar. 29, 2010).

Defendants argue that Plaintiff cannot satisfy the "serious condition" prong because he does not allege that he warned any officers or medical staff that he feared harm from "a particular inmate." Defs.' Br. at 12-14. But "a substantial risk of serious harm may exist in the

12

absence of any allegation of a history of altercations between the plaintiff and his attacker." Blake, 2014 WL 4230889, at *5. See also Heisler, 981 F. Supp. at 837 (denying summary judgment where officers failed to prevent attack as it was occurring).

It is undisputed that Plaintiff was attacked by inmates on four occasions within a five-month period. And Plaintiff has offered evidence that before the fourth attack he repeatedly requested to be placed in protective custody. At his deposition, Plaintiff testified that following each attack, he requested to be transferred to protective custody. In medical records dated August 5, 2014 (that is, before the first attack), medical staff also reported that Plaintiff requested to be moved to protective custody housing. Thus, on these disputed facts, a reasonable jury could conclude that Plaintiff was incarcerated under conditions posing a serious harm.

### 2. Officers' Deliberate Indifference

Defendants also argue that Plaintiff has failed to establish the second prong of his deliberate indifference claim—that the officers "recklessly failed to act with reasonable care to mitigate the risk that the condition posed to [him] even though the defendant-official knew, *or should have known*, that the condition posed an excessive risk to [the plaintiff's] health or safety.'" Charles, 925 F.3d at 87 (quoting Darnell, 849 F.3d at 35) (emphasis in original). See also Hayes, 84 F.3d at 620-21 (culpable intent found if defendant has knowledge of substantial risk of serious harm and disregards that risk by failing to take reasonable measures). "A plaintiff must show 'something more than mere negligence' to establish deliberate indifference in the Fourteenth Amendment context. Charles, 925 F.3d at 87 (quoting Weyant v. Okst, 101 F.3d 845, 856 (2d Cir. 1996)).

Defendants argue that they lacked the requisite knowledge of risk to Plaintiff's safety before the February 2015 attack, and that after that incident, they took reasonable measures to

13

abate further risk of harm by transferring Plaintiff to protective custody. In essence, Defendants argue that they are not responsible for a "surprise attack." But Plaintiff's theory is that this attack was not a surprise because he repeatedly warned correction and medical staff that he was at risk. Accepting Plaintiff's testimony as true, a jury could conclude that Plaintiff warned officers and medical staff before the February attack that he feared serious harm and believed that he needed to be moved to protective custody to prevent further injury. See Sanchez Dep. II 63:5-16 (Plaintiff requested protective custody from a doctor and captain before the February 2015 attack). First, Plaintiff testified that one of the inmates who attacked him in February 2015 was in the group of inmates who had attacked him in January 2015. See Sanchez Dep II 93:19-25. He also testified that he informed correction officers, including Defendant C.O. Daif,[2] before the February 2015 attack that he wished to be placed in protective custody. Id. At his deposition, Plaintiff further stated that he explained to Defendant Captain White and to another officer who placed him in the holding cell that he was scared because of the earlier attacks and wished to be placed in protective custody. Id. at 97:12-98:13, 100:10-21. The fact that Plaintiff did not name his attackers "is not, necessarily, outcome determinative." Hayes, 84 F.3d at 621. While Defendants took action to protect Plaintiff after the February 2015 attack, a jury could conclude that locking him in a cell with other inmates was not reasonable.

Additionally, Plaintiff testified that the February 2015 attack was in a holding cell that was "located right in front of the register where they register all the inmates when they come and go in or when they come back from court. The place where they do searching, where they search them." Sanchez Dep. II 99:18-23. Plaintiff testified that the February 2015 attack took

---

[2] Plaintiff testified that, before the February 2015 attack, he had requested protective custody in intake from an officer "Dait" who was the same officer that opened the door after the February 2015 attack. Sanchez Dep. II 95:13-24. There is no C.O. Dait in this caption. C.O. Daif is a Defendant in this action and the Court assumes that C.O. Daif's name was misspelled in Plaintiff's deposition.

between five and 15 minutes and that he "called several times . . . for help" before an officer arrived. Id. at 103:15-17, 104:13-17. Although the DOC incident report states that no officers observed the attack, this is a disputed material fact.[3] A reasonable jury could conclude, given the location of the attack—in a holding cell in front of a desk where inmates are regularly processed—that officers were present in the area of the attack to hear Plaintiff's calls for help and that they had an opportunity to intervene. If officers were within earshot of the attack and failed to respond to intervene, Plaintiff may establish a constitutional violation. See Rosen v. City of New York, 667 F. Supp. 2d 355, 360-61 (S.D.N.Y. 2009) (an officer displays deliberate indifference when he or she has adequate time to assess a serious threat against an inmate and a fair opportunity to protect the inmate yet fails to act).

Accordingly, I recommend that Defendants' motion for summary judgment be denied with respect to Plaintiff's failure to protect claim arising from the February 2015 incident.

### B. Deliberate Indifference to Medical Needs

Defendants also argue that they are entitled to summary judgment because there are no material issues of fact regarding Plaintiff's claim for deliberate indifference to medical needs. The standard that applies to a claim for failure to protect also applies to claims that a defendant was deliberately indifferent to a plaintiff's medical needs. See Charles, 925 F.3d at 87 (citing Darnell, 849 F.3d at 23-26, and noting that "deliberate indifference means the same thing for each type of claim under the Fourteenth Amendment"). Accordingly, to establish that defendants were deliberately indifferent to his medical needs, a plaintiff must show that he had

---

[3] Defendant Captain Olaniyan investigated the February 25, 2015 incident, but did not personally witness the assault. Defs.' 56.1 ¶ 86-87. Because Defendant Olaniyan is not alleged to have been personally involved with these attacks, he should be dismissed. See Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

a serious medical need and that Defendants acted with deliberate indifference to those needs. Id. at 86.

Defendants appropriately concede that Plaintiff suffered from an objectively serious medical need after the February 2015 attack. Following the attack, Plaintiff was transported to the hospital by EMS to be treated for a nasal fracture, facial abrasion, hand pain and tooth loss. Defs.' 56.1 ¶¶ 79-81. See Hudson v. McMillian, 503 U.S. 1, 10 (1992) (applying Eighth Amendment standard and finding that bruises, swelling, loosened teeth and a cracked dental plate "are not *de minimus*" injuries). They argue, however, that they are entitled to summary judgment because Plaintiff has not raised a material dispute as to whether his treatment was constitutionally adequate. After the February 2015 attack, Plaintiff received immediate medical attention and was later referred to nasal and dental specialists to treat his injuries. Defs.' 56.1 ¶¶ 84-85. Plaintiff does not establish that he was denied medical care or that the treatment he did receive was inadequate. Accordingly, Defendants are entitled to summary judgment on Plaintiff's deliberate disregard for a serious medical need claim. See Hill v. Curcione, 657 F.3d 116, 123 (2d Cir. 2011) (applying Eighth Amendment standard and noting that prisoners do not have the right to choose their medical treatment so long as treatment is adequate).

## IV. Qualified Immunity

Finally, Defendants argue that, regardless of whether Plaintiff can establish a claim, they are entitled to qualified immunity. "Qualified immunity protects officials from damages liability if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Mitchell v. City of New York, 749 F. App'x 75, 76 (2d Cir.), cert. denied, 140 S. Ct. 390 (2019) (quoting Mullenix v. Luna, 136 S. Ct. 305, 308 (2015)). Officers are entitled to qualified immunity under § 1983 "unless (1) they violated a federal

statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." Simon v. City of New York, 893 F.3d 83, 92 (2d Cir. 2018) (citing D.C. v. Wesby, 138 S. Ct. 577, 589 (2018)) (internal quotation marks and citations omitted). The law does not require "a case directly on point for a right to be clearly established," but some precedent must "place[ ] the statutory or constitutional question beyond debate." Francis v. Fiacco, 942 F.3d 126, 145 (2d Cir. 2019) (quoting White v. Pauly, 137 S. Ct. 548, 551) (internal quotation marks omitted). On a motion for summary judgment, "[i]f any reasonable trier of fact could find that the defendant's actions were objectively unreasonable, then the defendants are not entitled to summary judgment." Lennon v. Miller, 66 F.3d 416, 420 (2d Cir. 1995).

"It is clearly established that inmates have the right to be free from harm inflicted by fellow prisoners and that corrections officers have an obligation to protect inmates from a known and substantial risk of serious harm." Dublin v. New York City Law Dep't, No. 10-CV-2971 (LAP), 2012 WL 4471306, at *7 (S.D.N.Y. Sept. 26, 2012) (internal quotation marks and citations omitted). For the same reasons that I find that a genuine dispute prevents summary judgment on Plaintiffs' failure to protect claim, I find that the question of reasonableness of the Defendants' conduct precludes a qualified immunity determination as a matter of law.

## CONCLUSION

For these reasons, I recommend that Defendants' motion for summary judgment be GRANTED in part and DENIED in part. I recommend that summary judgment be granted as to the claims against Defendants Najah, Keely, Woods, Litwenak, Wolak, Taveras, Provilon, Michael, Trojanowski, Green, Thomas, Nunez, and Gomez because such claims are barred by the statute of limitations. I further recommend granting summary judgment in favor of Defendant

Olaniyan for lack of personal involvement. I also recommend that summary judgment be granted in favor of all Defendants on any deliberate indifference to medical needs claims.

With respect to deliberate indifference to a serious risk of inmate assault resulting in the February 2015 attack, I recommend that summary judgment be denied. Accordingly, a jury should determine whether Defendants White, Monroe and Daif were deliberately indifferent to Plaintiff's risk of serious injury when they placed him in a holding cell with other inmates and/or did not intervene to stop his attackers.

_____
SARAH NETBURN
United States Magistrate Judge

DATED:	February 11, 2020
	New York, New York

\*   \*   \*

### NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D), or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Paul G. Gardephe at the United States Courthouse, 40 Foley Square, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Gardephe. The failure to file these timely objections will result in a waiver of

those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).


cc:     Elvis Sanchez (*By Chambers*)
        18-A-3600
        Clinton Correctional Facility
        P.O. Box 2000
        Dannemora, NY 12929