UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------

ELVIS SANCHEZ,

                                   Plaintiff,

                                   - v -

CITY OF NEW YORK, ET AL.,

                                   Defendants.

**ORDER**

18 Civ. 1259 (PGG) (SN)

PAUL G. GARDEPHE, U.S.D.J.:

        This is a Section 1983 action in which pro se Plaintiff Elvis Sanchez alleges constitutional violations arising out of his incarceration on Rikers Island in 2014 and 2015. The Complaint alleges deliberate indifference to a serious risk of inmate assaults, and deliberate indifference to medical needs.

        The thirteen remaining Defendants – New York City Department of Correction ("DOC") officers and medical staff – have moved for summary judgment on all of Plaintiff's claims. (Dkt. No. 99) This Court referred Defendants' motion to Magistrate Judge Sarah Netburn for a Report and Recommendation ("R&R"). (Dkt. No. 109) On February 11, 2020, Judge Netburn issued a thorough nineteen-page "R&R" recommending that Defendants' motion be granted, except as to one incident in February 2015. (R&R (Dkt. No. 120) at 17-18)[1]

        For the reasons stated below, this Court will adopt Judge Netburn's R&R in its entirety, and Defendants' motion for summary judgment will be granted in part and denied in part.

---

[1] All references to page numbers in this Order are as reflected in this District's Electronic Case Files ("ECF") system.

# BACKGROUND

## I.  FACTS[2]

### A.  October 27, 2014 Incident

In July 2014, Plaintiff was indicted for Predatory Sexual Assault Against a Child and remanded. He was brought to the Anna M. Kross Center ("AMKC") on Rikers Island. (Def. R. 56.1 Stmt. (Dkt. No. 101) ¶¶ 1-2) On October 27, 2014, while Plaintiff was assigned to AMKC's Housing Area 9B – a dormitory without cell assignments – Plaintiff was attacked by three inmates. (Id. ¶¶ 6-8, 10-13) Plaintiff went to the medical clinic but reported that he had not been injured. Clinic doctors confirmed that Plaintiff had suffered no injury. (Id. ¶¶ 14-16) Defendant Captain Najah investigated this incident, but Plaintiff refused to provide a statement. (Id. ¶ 18) At deposition, Plaintiff claimed that he had asked Najah to place him in protective custody but Najah did not act on Plaintiff's request. (Id. ¶ 19) On October 28, 2014, however – the day after the alleged assault – Plaintiff was transferred to Mental Observation Dormitory 12B, because he was believed to be potentially suicidal. (Id. ¶¶ 20-25)

### B.  November 6, 2014 Incident

On November 6, 2014, while housed in Mental Observation Dormitory 12B, Plaintiff claims that he was attacked by another inmate, first in a bathroom – where no officer

---

[2] Defendants filed a Local Rule 56.1 Statement (Dkt. No. 101). Plaintiff did not file a response to Defendants Local Rule 56.1 Statement. As Judge Netburn notes, in such circumstances the movants' statement of material facts is deemed admitted. (R&R (Dkt. No. 120) at 1-2 (citing Local Civ. R. 56.1(c)). Given that Plaintiff is proceeding pro se, however, and submitted an affidavit in opposition to Defendants' motion (see Pltf. Aff. (Dkt. No. 116), this Court has not strictly construed Local Civ. R. 56.1(c). In resolving Defendants' motion, this Court has instead searched the record for relevant evidence and construed Plaintiff's submissions "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotations marks and citation omitted).

was present – and then outside the bathroom.  (Id. ¶¶ 28-32)  Plaintiff sought treatment at the medical clinic and was later transported to Elmhurst Hospital for back and facial pain and nasal bleeding.  (Id. ¶¶ 33-35)  Captain Whitaker investigated the incident and took a written statement from Plaintiff.[3]  (Def. R. 56.1 Stmt. (Dkt. No. 101) ¶¶ 36-37)  Plaintiff told Captain Whitaker that inmates had asked to speak to him about the charges against him, and then assaulted him in the bathroom, telling him to "show us your papers from court."  (Id. ¶¶ 38-39)  In the written statement he provided to Whitaker, Plaintiff did not request protective custody.  At deposition, however, Plaintiff claimed that he asked an unidentified correction officer to place him in protective custody.  (Id. ¶¶ 43-44)  On November 12, 2014, Plaintiff posted bail and was released from Rikers Island.  (Id. ¶¶ 45-47)

### C. January 16, 2015 Incident

In January 2015, Plaintiff was arrested for burglary, and he was again remanded to the AMKC at Rikers Island.  On January 10, 2015, Plaintiff completed an "Arraignment and Classification Risk Screening Form."  On the form, Plaintiff stated that he was not aware of any reason why he would need to be placed in protective custody.  (Id. ¶¶ 48-50)  Plaintiff was designated to the AMKC's Housing Area 10A.  On January 16, 2015, Plaintiff was attacked by inmates, none of whom had previously assaulted Plaintiff.  (Id. ¶¶ 51-54)  Plaintiff went to the medical clinic, where he was treated by Defendant Physician's Assistant Pierre Provilon for facial pain, superficial bruising, and controlled nasal bleeding.  Defendant Nurse Beatriz Nunez-Salas provided Plaintiff with Tylenol.  (Id. ¶¶ 56-59)  Plaintiff did not ask Defendants Provilon or Nunez-Salas to be placed in protective custody.  (Id. ¶¶ 58, 60)

---

[3] All claims against Whitaker were previously dismissed.  See March 28, 2019 Order (Dkt. No. 76) at 14.

At deposition, however, Plaintiff claimed that on January 16, 2015, he had asked Defendant clinic employees Tommy Michael, Cesar Thomas, Ronan David Trojnowski, Dr. Augustin Gomez, and Dr. Ayodele Green to be placed in protective custody.  (Id. ¶ 72)  There is no documentary evidence that Plaintiff met with any of these clinic employees on that day.  On January 16, 2015, however, Defendant Michael prepared a report summarizing Plaintiff's appointment with a different clinic employee on January 14, 2015.  (Id. ¶¶ 62-71)  Michael's report indicates that Plaintiff had undergone a psychiatric assessment and had been placed on suicide watch.  (Id. ¶ 61)

### D. February 25, 2015 Incident

On February 25, 2015, Plaintiff was transferred from Housing Area 11B to another housing area at the AMKC.  During transit, he was temporarily placed in an intake holding cell, where he was assaulted by other inmates.  (Id. ¶¶ 73-76)  At deposition, Plaintiff claimed that one of the inmates who assaulted him on February 25, 2015, was also involved in the January 2015 attack.  (See id., Ex. C ("Sanchez Dep. II") at 93:19-25)  Plaintiff also testified that Defendants Captain White, Captain Monroe, and Officer Daif were present when he was assaulted.  (See id. at 97:8-99:15, 104:14-105:18, 107:5-108:20)  Plaintiff went to the medical clinic, where he was given a Tetanus-Diptheria-Pertussis injection, placed on a backboard with a neck collar, and had his wounds treated.  (Id. ¶ 79)

Clinic staff arranged for Plaintiff to be transported to Elmhurst Hospital, where he was diagnosed with a minor nasal fracture, tooth loss, facial abrasion, and hand pain, and treated with Ibuprofen and nasal spray.  (Id. ¶¶ 81-82)  Plaintiff returned to the clinic and was prescribed nose spray and Motrin, and was referred to an ear, nose and throat doctor and a dentist.  (Id. ¶¶ 83-85)  Defendant Captain Olaniyan was assigned to investigate this incident.  Plaintiff refused to identify his attackers.  (Id. ¶¶ 86-88)  On February 27, 2015, Plaintiff provided non-party

Captain Davila with a statement saying that he did not know the names of the individuals who had attacked him, but that he could identify them by appearance. Plaintiff also requested protective custody. (Id. ¶¶ 89-91)

On March 1, 2015, Plaintiff was placed into protective custody at the Brooklyn Detention Center. (Id. ¶ 92)

## II.   PROCEDURAL HISTORY

The Complaint was filed on February 12, 2018. (Cmplt. (Dkt. No. 2)) On June 25, 2018, Defendants City of New York, Durante, Stanley, and Whitaker moved to dismiss. (Dkt. No. 23) This Court referred the motion to Judge Netburn for an R&R. (Dkt. No. 45) Judge Netburn issued an R&R on February 6, 2019, recommending that the motion be granted. (Feb. 6, 2019 R&R (Dkt. No. 71)) On March 28, 2019, this Court adopted the R&R in its entirety, and dismissed Plaintiffs' claims against the City, Durante, Stanley and Whitaker. The Court granted leave to amend. (March 28, 2019 Order (Dkt. No. 76) at 14)

Plaintiff did not file an Amended Complaint, and on July 24, 2019, the remaining Defendants moved for summary judgment. (Dkt. No. 99) On September 18, 2019, the motion was referred to Judge Netburn for a report and recommendation. (Dkt. No. 109)

On October 29, 2019, Plaintiff filed a memorandum of law and an affidavit in opposition to Defendants' motion. As discussed above, Plaintiff did not file a response to Defendants' Local Rule 56.1 Statement. (Dkt. Nos. 116, 117)

On February 11, 2020, Judge Netburn issued an R&R recommending that this Court (1) grant Defendants summary judgment as to the October 27, 2014, November 6, 2014, and January 16, 2015 incidents; and (2) grant the motion in part and deny the motion in part as to the February 25, 2015 incident. (R&R (Dkt. No. 120) at 10, 17-18) The R&R provides notice of the fourteen-day limit for making objections. (Id. at 18-19)

Neither side submitted objections within the fourteen-day period.  On February 26, 2020, this Court extended Plaintiff's time to file objections to March 10, 2020.  (Dkt. No. 122)  No objections to the R&R have been received.

## DISCUSSION

### I.     LEGAL STANDARDS

#### A.     Review of a Report and Recommendation

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).  Where a timely objection has been made to a magistrate judge's recommendation, the district court judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id.  For portions of the R&R to which no timely objection is made, this Court's review is limited to a consideration of whether there is any "'clear error on the face of the record'" that precludes acceptance of the recommendations. Wingate v. Bloomberg, 2011 WL 5106009, at *1 (S.D.N.Y. Oct. 27, 2011) (quoting Fed. R. Civ. P. 72(b) advisory committee note; citing Nelson v. Smith, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985) ("To accept the report and recommendation of a magistrate, to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record.")).

#### B.     Summary Judgment

Summary judgment is warranted where the moving party shows that "there is no genuine dispute as to any material fact" and that that party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.1(a).  "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. Cnty. of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (citing Guilbert v. Gardner,

480 F.3d 140, 145 (2d Cir. 2007)). "'[W]here the non[-]moving party will bear the burden of proof at trial, Rule 56.1 permits the moving party to point to an absence of evidence to support an essential element of the non[-]moving party's claim.'" Lesavoy v. Lane, No. 02 Civ. 10162, 2008 WL 2704393, at *7 (S.D.N.Y. July 10, 2008) (quoting Bay v. Times Mirror Magazines, Inc., 936 F.2d 112, 116 (2d Cir. 1991)).

In deciding a summary judgment motion, the Court "'resolve[s] all ambiguities, and credit[s] all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment.'" Spinelli v. City of New York, 579 F.3d 160, 166 (2d Cir. 2009) (quoting Brown v. Henderson, 257 F.3d 246, 251 (2d Cir. 2001)). However, a "'party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment. . . . [M]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist.'" Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (alteration in original) (quoting Fletcher v. Atex, Inc., 68 F.3d 1451, 1456.1 (2d Cir. 1995)). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." Eviner v. Eng, No. 13 Civ. 6940 (ERK), 2015 WL 4600541, at *6 (E.D.N.Y. July 29, 2015) (quoting Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996)).

Pro se submissions are "construed liberally and interpreted to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citation omitted); see also Williams v. Annucci, 895 F.3d 180, 193 (2d Cir. 2018) (applying Triestman in reversing a district court's grant of summary judgment against a pro se plaintiff).

## II.     ANALYSIS

In her thorough and well-reasoned nineteen-page R&R, Judge Netburn recommends granting Defendants summary judgment on Plaintiff's claims regarding the October 27, 2014, November 6, 2014, and January 16, 2015 incidents, and granting the motion in part and denying the motion in part as to the February 25, 2015 incident.  (R&R (Dkt. No. 120) at 10, 17-18)  Because neither side has filed objections to the R&R, this Court reviews the R&R only for clear error.  Wingate, 2011 WL 5106009, at *1.

### A.     Statute of Limitations

Judge Netburn finds that Plaintiff's claims regarding the October 27, 2014, November 6, 2014, and January 16, 2015 incidents are time-barred.  Plaintiff did not submit the Complaint to prison authorities until February 5, 2018.  (R&R (Dkt. No. 120) at 7 & 7 n.1)

The applicable statute of limitations for Section 1983 claims is three years, and such a claim accrues "'when the plaintiff knows or has reason to know of the harm.'"  (Id. (quoting Shomo v. City of New York, 579 F.3d 176, 181 (2d Cir. 2009)))  Because (1) the first three incidents cited by Plaintiff occurred on or before January 16, 2015; and (2) Plaintiff first submitted the Complaint to prison authorities on February 5, 2018, Judge Netburn correctly concludes that claims premised on these incidents are time-barred.  (Id. at 10)

Judge Netburn next considers whether the evidence will support application of equitable tolling.  (Id. at 8-10)  Equitable tolling "applies only in '"rare and exceptional cases"' where . . . "extraordinary circumstances" prevented a party from timely performing a required act, and that party "acted with reasonable diligence throughout the period he [seeks] to toll."'"  (Id. at 8 (quoting Walker v. Jastremski, 430 F.3d 560, 564 (2d Cir. 2005) (quoting Doe v. Menefee, 391 F.3d 147, 159 (2d Cir. 2004))) (alterations in original))  Plaintiff argues that his imprisonment constitutes "extraordinary circumstances," but Judge Netburn correctly finds that

8

this argument "is not supported by the law in this Circuit." (Id. at 9 (citing Walker v. Jastremski, 159 F.3d 117, 119 (2d Cir. 1998))) Judge Netburn also notes that Plaintiff was not in custody for "a period of two months between the November 2014 and 2015 incidents. . . ." (Id.) Finally, Judge Netburn correctly finds that the California and Colorado cases cited by Plaintiff are irrelevant. (Id. at 9-10)

As to the continuing violations doctrine, Judge Netburn notes that "[a] plaintiff must . . . allege that a specific defendant committed a constitutional violation within the limitations period." (Id. at 10 (citing Crenshaw v. Syed, No. 9:10-CV-0244 (GLS) (GHL), 2011 WL 2975687, *4 (W.D.N.Y., Mar. 8, 2011))) But "Plaintiff does not claim, nor does he put forth facts that could show[,] that any of the individual Defendants allegedly involved" in the three time-barred incidents were involved in the February 25, 2015 incident. (Id.) Judge Netburn properly concludes that, given these circumstances, the continuing violations doctrine does not apply. (Id.)

For all of these reasons, this Court agrees with Judge Netburn that claims premised on the October 27, 2014, November 6, 2014, and January 16, 2015 incidents are time-barred, and that Defendants are entitled to summary judgment on these claims.[4]

---

[4] "Plaintiff's claims against Defendants Najah, Keely, and Woods arose from conduct that occurred on October 27, 2014. The claims against Defendants Litwenak, Wolak, and Taveras arose from conduct that occurred on November 6, 2014. And the claims against Defendants Provilon, Trojanowski, Green, Thomas, Nunez, and Gomez arose from conduct that occurred on January 16, 2015." (R&R (Dkt. No. 120) at 7) Summary judgment is granted to these Defendants on these claims.

### B. February 25, 2015 Incident

With respect to the February 25, 2015 incident, the Complaint alleges deliberate indifference to a serious risk of inmate assault, and deliberate indifference to medical needs. (R&R (Dkt. No. 120) at 11)

#### 1. Deliberate Indifference to a Serious Risk of Inmate Assault

Judge Netburn recommends denying Defendants' motion for summary judgment as to Plaintiff's claim of deliberate indifference to a serious risk of inmate assault on February 25, 2015. (Id. at 15) As noted earlier, Plaintiff testified that Defendants White, Monroe, and Daif were present for this incident. (See Sanchez Dep. II (Dkt. No. 101-3) at 97:8-99:15, 104:14-105:18, 107:5-108:20)

To succeed on such a claim, "a pretrial detainee must show that (1) the conditions at issue were 'sufficiently serious to constitute objective deprivations of the right to due process,' and (2) an officer 'acted with at least deliberate indifference to the challenged conditions.'" (Id. at 11 (quoting Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017))

Here, Judge Netburn concludes that there are material issues of fact as to these issues, given the evidence that (1) Plaintiff "was attacked by inmates on four occasions within a five-month period"; and (2) "before the fourth attack [Plaintiff] repeatedly requested to be placed in protective custody." (Id. at 13) "Accepting Plaintiff's testimony as true, a jury could conclude that Plaintiff warned officers and medical staff before the February attack that he feared serious harm and believed that he needed to be moved to protective custody to prevent further injury." (Id. at 14) "While Defendants took action to protect Plaintiff after the February 2015 attack, a jury could conclude that locking him in a cell with other inmates was not reasonable." (Id.) Moreover, given the location of the holding cell where the incident allegedly occurred – "in

front of a desk where inmates are regularly processed" – Judge Netburn finds that there are material issues of fact as to whether the Defendants who were allegedly nearby – White, Monroe, and Daif – had an opportunity to intervene. (Id. at 15) Based on the current record, this Court agrees.

Judge Netburn further finds that there are material issues of fact as to whether Defendants White, Monroe, and Daif are entitled to qualified immunity as to this claim. (Id. at 17) "'If any reasonable trier of fact could find that the defendant's actions were objectively unreasonable, then the defendants are not entitled to summary judgment.'" (Id. (quoting Lennon v. Miller, 66 F.3d 416, 420 (2d Cir. 1995)) (alteration in original)) Judge Netburn concludes that the same material issues of fact cited earlier preclude a finding as a matter of law that Defendants' actions were reasonable. (Id.) This Court agrees with Judge Netburn's analysis.

Accordingly, as to Plaintiff's claim of deliberate indifference to a serious risk of inmate assault on February 25, 2015, Defendants' motion for summary judgment is denied as to Defendants White, Monroe, and Daif.[5]

### 2. Deliberate Indifference to Medical Needs

Judge Netburn recommends granting Defendants summary judgment on Plaintiff's claim for deliberate indifference to medical needs on February 25, 2015. (Id. at 16) To prevail on such a claim, a plaintiff must "show that he had a serious medical need and that Defendants acted with deliberate indifference to those needs." (Id. at 15-16 (citing Charles v. Orange Cty., 925 F.3d 73, 87 (2d Cir. 2019))) Judge Netburn finds that "[a]fter the February

---

[5] Judge Netburn recommends that summary judgment be granted as to Defendant Olaniyan, because there is no evidence that he "personally witness[ed] the [February 25, 2015] assault," and he "is not alleged to have been personally involved with these attacks . . . ." (R&R (Dkt. No. 120) at 15 n.3) This Court agrees. Accordingly, Defendants are granted summary judgment as to Plaintiff's deliberate indifference claim against Defendant Olaniyan.

11

2015 attack, Plaintiff received immediate medical attention and was later referred to nasal and dental specialists to treat his injuries." (Id. at 16)  Based on this finding, Judge Netburn concludes that Plaintiff has not demonstrated "that he was denied medical care or that the treatment he did receive was inadequate." (Id.)  This Court sees no error in Judge Netburn's conclusion.

## CONCLUSION

For the reasons stated above, Judge Netburn's R&R is adopted in its entirety. Defendants' motion for summary judgment (Dkt. No. 99) is granted in part and denied in part as set forth above.  Defendants' motion for summary judgment is granted as to Plaintiff's claims related to the October 27, 2014, November 6, 2014, and January 16, 2015 incidents, and as to Plaintiff's claims for deliberate indifference to medical needs.  As to Plaintiff's claim for deliberate indifference to a serious risk of inmate assault on February 25, 2015, Defendants' motion for summary judgment is granted as to Defendant Olaniyan but denied as to Defendants White, Monroe, and Daif.

The Clerk of Court is directed to terminate Defendants Najah, Keely, Woods, Litwenak, Wolak, Taveras, Provilon, Michael, Trojanowski, Green, Thomas, Nunez, Gomez, and Olaniyan, and to terminate the motion (Dkt. No. 99).

Copies mailed by Chambers.

Dated: New York, New York
       May 1, 2020

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge